UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

NORTHSHOR EXPERIENCE, INC.,
A Minnesota corporation; and
ENTERTAINMENT CONCEPTS, L.L.C.,
a Minnesota limited liability company;

        Plaintiffs,

v.                                                  **PRELIMINARY INJUNCTION**
                                                    Civil File No. 06-2998 (MJD/AJB)

CITY OF DULUTH, MINNESOTA,
a municipal corporation; and
CITY OF MINNEAPOLIS, a
municipal corporation;

        Defendants.

_____

Randall D. B. Tigue, Tigue Law Office, Counsel for Plaintiffs.

M. Alison Lutterman, Duluth City Attorney's Office, Counsel for Defendant City of Duluth.

Franklin E. L. Reed, Minneapolis City Attorney's Office, Counsel for Defendant City of Minneapolis.

_____

**I.     INTRODUCTION**

       This matter is before the Court on Plaintiffs' Motion for Preliminary

Injunction and Motion for Temporary Restraining Order. [Docket No. 2] The

Court heard oral argument on July 31, 2006. At oral argument, Plaintiffs

1

withdrew their motion for injunctive relief against the City of Minneapolis, so the Court now only addresses the remaining motion against the City of Duluth.

## II.   BACKGROUND

### A.   Plaintiff Northshor Experience, Inc.

James Gradishar is the president of Plaintiff Northshor Experience, Inc. ("Northshor").  Northshor has a lease to operate the Northshor Theater on Superior Street in Duluth, Minnesota.  It intends to feature live nude dance entertainment and would do so immediately but for the threat of arrest by Duluth police officers.

### B.   Minnesota Statute

On May 27, 2006, Chapter 240 of Sessions Laws 2006, codified as Minnesota Statute § 617.242 ("the Statute") became effective.  The Statute requires that an adult entertainment establishment, such as a business featuring live nude performances, provide notice to its local government of its intent to operate sixty days before applying for a permit to operate or sixty days before opening for business, if no permit is required.  Id. subd. 2.  Under subdivision 3, municipalities can refuse to permit an adult business to open as long as another adult business exists within fifty miles of the local unit of government's boundaries.  Under subdivision 4, an adult entertainment establishment is not permitted within 1,500 feet of another adult entertainment establishment, within

500 feet of residential property, regardless of its zoning, or within 2,800 feet of a school or place of worship. Subdivision 5 prohibits adult entertainment establishments from being open before 10:00 a.m. or after 10:00 p.m., Monday through Saturday, and prohibits operation on Sunday.

> The Statute provides for application to local governments:
>
> Local regulation allowed. If a county, town, or statutory or home rule charter city does not enact an ordinance or regulation governing adult entertainment establishments, this section applies in the county, town, or city. A county, town, or city may adopt an ordinance or regulation that is consistent with this section, that supersedes or is in whole or in part more restrictive than this section, or that provides that this section does not apply in the county, town, or city, and the county, town, or city ordinance applies. If a county, town, or city adopts an ordinance that only regulates a portion or facet of the operation of an adult entertainment establishment, this section applies to the remainder of the operation that is not regulated by the county, town, or city ordinance, unless the ordinance provides otherwise.

Minn. Stat. § 617.242, subd. 7.

### C.     Duluth Ordinance

On July 10, 2006, the Duluth City Council enacted Ordinance No. 9781, purportedly opting out of the Statute. However, Ordinance 9781 does apply certain distance restrictions to adult entertainment establishments that would prohibit Northshor from offering nude dancing in its current location. The ordinance was enacted without a public hearing or action by the planning agency or planning commission. It becomes effective on approximately August 21, 2006,

thirty days after it was published.

### D.   Procedural Background

On July 13, 2006, Plaintiffs Northshor and Entertainment Concepts, L.L.C., filed their Complaint against Defendants Duluth and Minneapolis in this Court. The Complaint alleges Count 1: Unconstitutional Statute; and Count 2: Illegal and Unconstitutional Ordinance.  On that same day, Plaintiffs filed the current Motion for Preliminary Injunction and Temporary Restraining Order requesting that the Court enjoin Defendants from taking any action, civil, criminal, or administrative to enforce the provisions of the Statute, or Duluth City Ordinance No. 9781, against Plaintiffs for operating adult entertainment establishments within the State of Minnesota.  Because Plaintiffs have withdrawn their request for an injunction against Minneapolis, the only remaining motion before the Court is Northshor's request for a preliminary injunction against Duluth.

## III.   DISCUSSION

### A.   Standard

The Eighth Circuit Court of Appeals has established the standard for considering preliminary injunctions and temporary restraining orders.  Dataphase Sys. Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc).  This Court must consider (1) the threat of irreparable harm to the moving party if an injunction is not granted, (2) the harm suffered by the moving party if injunctive

relief is denied as compared to the effect on the non-moving party if the relief is granted, (3) the public interest, and (4) the probability that the moving party will succeed on the merits.  Id.

"[A] preliminary injunction motion is too early a stage of the proceedings to woodenly assess a movant's probability of success on the merits with mathematical precision."  Gen. Mills, Inc. v. Kellogg Co., 824 F.2d 622, 624 (8th Cir. 1987).  "[W]here the balance of other factors tips decidedly toward plaintiff a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation."  Dataphase Sys., Inc., 640 F.2d at 113.

### B. Duluth Ordinance

#### 1. Success on the Merits

Northshor argues that Duluth unlawfully enacted Ordinance 9781 because the ordinance is a zoning ordinance and must follow the procedural dictates of the Municipal Planning Act, Minn. Stat. § 462.357 ("MPA").  Under the MPA, a city cannot adopt a zoning ordinance or amendment without first holding a public hearing, with notice disseminated ten days prior.  Id. subd. 3.  If an amendment to a zoning ordinance is not initiated by the planning agency, it must be referred to that agency for study and recommendation, before it is enacted.  Id. subd. 4.  Zoning ordinance amendments enacted in violation of the MPA are invalid.  See, e.g., DI MA Corp. v. City of St. Cloud, 562 N.W.2d 312, 320 (Minn. Ct. App. 1997).

Duluth responds that Ordinance 9781 is not a zoning ordinance under the MPA; thus, it was not required to comply with the MPA's procedural requirements. Instead, it asserts that the ordinance is an exercise of its police powers to control public nuisance. Duluth argues that its ordinance is not a zoning ordinance because it does not implement a comprehensive plan or create zones or districts of uses. Alternatively, Duluth claims that, as a first class city, it is permitted to provide a different process for approval of zoning ordinances through the operation of its home rule charter. Minn. Stat. § 462.357, subd. 5.

The Court concludes that Duluth Ordinance 9781 is a zoning ordinance. The MPA itself explains the definition of zoning as follows:

> **Authority for zoning.** For the purpose of promoting the public health, safety, morals, and general welfare, a municipality may by ordinance regulate on the earth's surface, . . . the location, . . . of buildings and other structures, . . . the uses of buildings and structures for trade, industry, residence, recreation, public activities, or other purposes, and the uses of land for trade, industry, residence, recreation, . . . and may establish standards and procedures regulating such uses. . . . The ordinance embodying these regulations shall be known as the zoning ordinance and shall consist of text and maps.

Minn. Stat. § 462.357, subd. 1. Ordinance 9781 regulates the location and uses of buildings on the earth's surface and establishes standards and procedures regulating such uses. It is a "zoning ordinance" within the definition of the MPA. See also Fifth Column v. Village of Valley View, Ohio, 100 F. Supp. 2d 493, 503-06

(N.D. Ohio 1998) (holding that ordinance limiting placement of adult dancing establishments by imposing distance restrictions was a "zoning ordinance" subject to the procedural requirements of the state statute because the ordinance had "the actual and intended effect of limiting how a piece of property may be used, depending on its location;" "police power includes the power to regulate land use through zoning and districting ordinances," and the Supreme Court has characterized distance restrictions on adult uses as "zoning ordinances"), aff'd, 221 F.3d 1334 (6th Cir. June 13, 2000) (table).

Ordinance 9781 is a zoning ordinance, and there is no assertion that Duluth complied with the MPA when enacting it. Nor is there evidence that Duluth followed an approved procedure pursuant to Minnesota Statute § 462.357, subd 5. Because the Ordinance 9781 was enacted in violation of the MPA, it is invalid and unenforceable. The Court does not reach Northshor's claims that the ordinance is otherwise illegal and unconstitutional. Plaintiffs have demonstrated a likelihood of success on the merits.

### 2. Irreparable Harm

Northshor has presented evidence that it is prepared to offer nude dancing but for the threat of enforcement of distance restrictions by Duluth. Nude dancing is expressive conduct protected by the First Amendment. BZAPS, Inc. v. City of Mankato, 268 F.3d 603, 605 (8th Cir. 2001). Without the injunction,

Northshor faces the choice of refraining from its constitutionally protected activity or facing possible criminal prosecution. "Loss of first amendment freedoms constitutes an irreparable injury." Bukaka, Inc. v. County of Benton, 852 F. Supp. 807, 811 (D. Minn. 1993) (citing Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion)). The Court concludes that Northshor has demonstrated that it faces irreparable harm if the Court does not enjoin enforcement of Ordinance 9781.

### 3. Balance of the Harms

The Court concludes that the balance of the harms weighs in favor of granting the preliminary injunction. Duluth has an important interest in enforcing its zoning code to protect the welfare of its citizens. However, Northshor faces the suppression of its protected expression and has demonstrated a strong likelihood of success on its claim that the ordinance was unlawfully enacted. The Court concludes that Duluth cannot show that a short delay in enforcing the zoning ordinance, which Duluth represents would not have even gone into effect until late August, will cause particular harm at this point in time.

### 4. Public Interest

The public interest weighs in favor of granting the injunction. Duluth has demonstrated an important public interest in protecting the welfare of its residents by enforcing its zoning code. However, the public interest favors

protecting First Amendment expression.  <u>Mga Susu, Inc. v. County of Benton</u>, 853 F. Supp. 1147, 1154 (D. Minn. 1994).  Additionally, through the MPA, the legislature has demonstrated the public's interest in following a clear procedure for enacting zoning ordinances, which includes notice to the public and the opportunity to comment on the proposed ordinance.

Weighing the above factors, all of which weigh in favor of granting a preliminary injunction enjoining Duluth Ordinance 9781, the Court concludes that a preliminary injunction is warranted.

### C. Minnesota Statute

#### 1. Success on the Merits

##### a. Introduction

Because the Court enjoins Duluth Ordinance 9781, Duluth no longer has "an ordinance or regulation governing adult entertainment establishments," and, in the absence of such a regulation, the Statute applies.  Minn. Stat. § 617.242, subd. 7.  Thus, the Court must consider Northshor's request to enjoin Duluth's enforcement of the Statute.

Northshor challenges three provisions of the Statute:

> 1) subdivisions 2 and 3, which require sixty days notice to the city prior to operating an adult entertainment establishment and permit local governments to completely ban new operation of adult entertainment establishments if another adult entertainment establishment exits within fifty miles of the local government's boundaries;

9

2) subdivision 4, which provides: "An adult entertainment establishment may not operate in the same building as, or within 1,500 feet from, another adult entertainment establishment; within 500 feet of residential property, regardless of how the property is zoned; or within 2,800 feet of a public or private elementary or secondary school or a church, synagogue, mosque, or other place of worship. Distances are measured between the closest property lines;" and

3) subdivision 5, which provides that an adult entertainment establishment "may not be open for business before 10:00 a.m. or after 10:00 p.m. on Monday through Saturday and may not be open for business on a Sunday or legal holiday."

### b. Standard

Nude dancing is expressive conduct protected by the First Amendment. BZAPS, Inc. v. City of Mankato, 268 F.3d 603, 605 (8th Cir. 2001). However, a local government may use its zoning powers to limit the location of an adult entertainment establishment. Id. Such a zoning ordinance is valid if it 1) "is constructed without reference to content;" 2) "is designed to promote a substantial governmental interest;" and 3) "allows reasonable alternative avenues for communication." Id. (citations omitted). When a zoning ordinance restricts the location of a specific adult use, such as nude dancing, and treats that use differently than other entertainment establishments, it may nevertheless be content-neutral if it is not aimed at the content of the speech but rather at the secondary effects of the businesses on the surrounding community. City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47-48 (1986).

> [A] municipality may rely on any evidence that is reasonably believed to be relevant for demonstrating a connection between speech and a substantial, independent government interest. This is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance. If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard . . . If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance.

City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 438-39 (2002) (citations omitted).

"[I]n terms of demonstrating that such secondary effects pose a threat, the city need not conduct new studies or produce evidence independent of that already generated by other cities to demonstrate the problem of secondary effects, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." City of Erie v. Pap's A.M., 529 U.S. 277, 296 (2000) (citation omitted). Thus, generally, the government does not need to study evidence of adverse secondary effects within itself, but may rely on previous findings from other jurisdictions. However, the mere inclusion of a boilerplate finding that the statute is designed to combat adverse secondary effects does not satisfy the content-neutrality test. See Phillips v. Borough of Keyport, 107 F.3d 164, 175 (3d Cir. 1997).

### c. Notice and Fifty-Mile Restrictions

Under subdivisions 2 and 3 of the Statute, municipalities, including Duluth, possess complete discretion to ban the operation of an adult entertainment establishment if another adult entertainment establishment is located within the surrounding 7,850 miles. The Statute provides the vast majority of local governments in Minnesota, including Duluth, the unbridled discretion to absolutely ban new adult entertainment.

The Statute's requirement that an adult entertainment establishment first provide sixty days notice before operating combined with the Statute's provision of unbridled discretion to local governments, such as Duluth, to prohibit that establishment from operating, appears to constitute an unlawful prior restraint, similar to a discretionary licensing scheme, and to substantially reduce the availability of protected sexually explicit speech. See, e.g., Forsyth County, Ga. v. Nationalist Movement, 505 U.S. 123, 133 n.10 (1992) ("Accordingly, the success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decisionmaker rests not on whether the administrator has exercised his discretion in a content-based manner, but whether there is anything in the ordinance preventing him from doing so."); Executive Arts Studio, Inc. v. City of Grand Rapids, 391 F.3d 783, 797-98 (6th Cir. 2004) (holding that adult book store ordinance failed constitutional scrutiny when it would "not only

disperse adult bookstores, but severely limit their number").

The Court concludes that Northshor has demonstrated a likelihood of success on the merits of its claim that subdivisions 2 and 3 of the Statute violate the First Amendment.

### d. Distance Restrictions

Northshor also claims that the distance restrictions contained in subdivision 4 of the Statute violate the First Amendment because application of the Statute to Duluth provides no reasonable alternative avenues for communication. A content-neutral ordinance regulating adult entertainment must allow reasonable alternative avenues for communication. City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 50 (1986). In order to determine the existence of reasonable alternatives, the Court examines the amount of land in Duluth open for use for adult sites after application of subdivision 4 of the Statute. Id. at 53. The land does not need to be "commercially viable" for adult entertainment when there is "ample, accessible real estate," including commercial property accessible by roads. Id. Thus, while land need not be available to Northshor "at bargain prices," id. at 54, "property is not 'potentially' available when it is unreasonable to believe that it would ever become available to any commercial enterprise." Topanga Press, Inc. v. City of Los Angeles, 989 F.2d 1524, 1531 (9th Cir. 1993). The Court must determine whether, under the Statute, permissible sites for an adult

entertainment establishment are part of an "actual market for commercial enterprises," and whether, after excluding those sites not part of the relevant real estate market, there are an adequate number of potential sites. Id. at 1531-32.

Northshor's' expert, Robert Bruce McLaughlin, opines that, under the Statute, approximately 4.34 percent of Duluth would be available for adult entertainment. Based on his first-hand inspection of those sites, Gradishar represents that the available land is occupied by the airport or is heavily industrial, either lacking infrastructure and inaccessible or occupied by an existing heavy industrial use, such as a manufacturing plant or mineral piles. Gradishar has also provided photographs of the available sites corroborating his affidavit. The affidavit of Duluth Senior Planner Charles Froseth does not contradict Northshor's assertion that no commercial land is available for adult entertainment establishments in Duluth because Froseth only opines as to the existence of suitable sites under the less restrictive distance requirements in Duluth Ordinance 9781.

At this early stage in the litigation, based on the admissible evidence in the record, the Court concludes that, under the Statute, there are no available sites for location of an adult entertainment establishment, such as Northshor, within Duluth. Thus, subdivision 4 of the Statute violates the First Amendment because it provides no reasonable alternative avenues for communication. See Univ. Books

& Videos, Inc. v. Miami-Dade County, 132 F. Supp. 2d 1008, 1014 (S.D. Fla. 2001) (noting that courts generally find that the number of sites is inadequate if they occupy less than one percent of a city's acreage).

### e.     Time Restrictions

Plaintiffs assert that the Statute's restrictive hours of operations censor adult entertainment speech because the majority of patrons of adult entertainment establishments patronize them between midnight and 3:30 a.m. and an adult entertainment establishment would fail if subject to the Statute's time restrictions. (See Wise Aff. ¶¶ 7-9; Peterson Aff. ¶ 9.)  The parties have presented no legislative history indicating that the hours of operation restriction is necessary to combat adverse secondary effects.  Only one study of the hours of operation of adult entertainment establishments has been cited to the Court, and that Phoenix, Arizona study does not support the time restrictions contained in the Statute. (McLaughlin Aff. ¶¶ 53-54.)

Duluth argues that it has presented evidence of the secondary effects associated with adult entertainment by presenting affidavits from local police officers concluding that secondary effects exist.  However, these affidavits have no connection to the particular time restrictions contained within the Statute.  In fact, they make no mention of a connection between secondary effects and hours of operation.  Thus, the Court concludes that Northshor is likely to succeed on its

claim that the time restrictions are not content-neutral because they were aimed at the content of the speech, not at the secondary effects of adult entertainment businesses on the surrounding community. City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47-48 (1986). At this stage, Northshor has shown that it is likely to succeed on its claim that the Statute was not designed to promote the substantial governmental interest of combating negative secondary effects. Thus, Northshor has demonstrated a likelihood of success on the merits of its claim that the time restrictions contained in the Statute violate the First Amendment.

The Court concludes that Northshor has demonstrated a likelihood of success on the merits of its claim that subdivisions 2, 3, 4, and 5 of the Statute are unconstitutional. Because these provisions of the Statute are intertwined with the remaining provisions of the Statute, the Court concludes that Northshor has demonstrated a likelihood of success on the merits on its claim that the entire Statute is unconstitutional.

### 2. Irreparable Harm

Northshor has demonstrated that it faces irreparable harm if the injunction does not issue. Without the preliminary injunction, it must refrain from offering nude dancing. Northshor faces the choice of abandoning its constitutionally protected activity or facing possible criminal prosecution. As previously noted, "[l]oss of first amendment freedoms constitutes an irreparable injury." Bukaka,

Inc. v. County of Benton, 852 F. Supp. 807, 811 (D. Minn. 1993) (citing Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion)).

### 3.   Balance of the Harms and Public Interest

The Court concludes that the balance of the harms weighs in favor of granting the preliminary injunction. Duluth and the State of Minnesota have an important interest in protecting the welfare of their citizens through zoning. However, Northshor faces the suppression of its protected expression and has demonstrated a strong likelihood of success on its claim that the Statute violates the First Amendment. Furthermore, the public interest favors protecting First Amendment expression. See Mga Susu, Inc. v. County of Benton, 853 F. Supp. 1147, 1154 (D. Minn. 1994).

Weighing the above factors, all of which weigh in favor of granting a preliminary injunction enjoining the Statute, the Court concludes that a preliminary injunction is warranted.

### D.   Security

Federal Rule of Civil Procedure 65(c) requires an applicant for a preliminary injunction to post security "in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

Northshor requests that the Court waive the security requirement because

the preliminary injunction will cause no harm to Duluth.  See Bukaka, 852 F. Supp. at 813 (waiving security requirement when "no demonstrable harm will befall [county] if it is wrongfully restrained from enforcing the code pending the outcome of this action;" "plaintiff seeks to vindicate important first amendment rights;" and "[r]equiring it to provide a security could prevent judicial review of the code's constitutionality").  Duluth has not addressed this issue or attempted to quantify any dollar amount of harm that it may face from a wrongly issued injunction.  Because Duluth has not objected to Northshor's request to waive the security requirement, the Court exercises its discretion to waive the security requirement in this case.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion for Preliminary Injunction and Motion for Temporary Restraining Order [Docket No. 2] is **GRANTED** as follows:

    a. Plaintiffs' motion for a preliminary injunction and motion for temporary restraining order against Defendant City of Minneapolis is **WITHDRAWN**.

    b. Plaintiffs' motion for a preliminary injunction and motion for temporary restraining order against Defendant City of Duluth is **GRANTED**.

    c. Defendant City of Duluth is restrained and enjoined from taking any action, civil, criminal, or administrative, to enforce the provisions of Session Laws 2006, Chapter 240, or Duluth City Ordinance No. 9781, against Plaintiff Northshor

        Experience, Inc.

3. This Order is effective upon the date recited below and shall remain in effect until this action is terminated, or until otherwise ordered by the Court.

4. The security requirement of Federal Rule of Civil Procedure Rule 65(c) is waived.


Dated: August 2, 2006                      s / Michael J. Davis
                                                          Judge Michael J. Davis
                                                          United States District Court